IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS J. RIVERA MAYSONET, | : | |
| | : | |
| Petitioner, | : | CIVIL ACTION NO. 18-2260 |
| | : | |
| v. | : | |
| | : | |
| TAMMY S. FERGUSON, THE DISTRICT ATTORNEY OF THE COUNTY OF LEHIGH, and THE ATTORNEY GENERAL OF THE STATE OF JOSH SHAPIRO, | : : : : : : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                                                                                  February 11, 2019

      The *pro se* petitioner, currently serving a life sentence for a first-degree murder conviction in 2000, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Because the petitioner failed to file the instant petition until approximately 12 years had passed from the end of the one-year statute of limitations, the court will dismiss the petition as untimely.

      **I.**       **PROCEDURAL HISTORY[1]**

      In September 2000, the petitioner, Carlos J. Rivera Maysonet ("Maysonet"), pleaded guilty to criminal homicide for using a shotgun to kill another person on September 29, 1998.[2] The Honorable Edward D. Reibman of the Court of Common Pleas of Lehigh County then conducted a degree-of-guilt hearing after which he found Maysonet guilty of first-degree

---

[1] The court has compiled the procedural history of this matter by reviewing the habeas petition and the attachments thereto, the respondents' submission in opposition to the petition, the state court record, and the publicly available trial court and appellate court dockets.

[2] *See* Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet"), Ex. A, Tr. of Sept. 5, 2000 Guilty Plea Hr'g at 23–24, Doc. No. 1; State Ct. R. A more detailed description of the facts underlying Maysonet's criminal charges is contained in an October 4, 2001 opinion by the Superior Court of Pennsylvania. *See* State Ct. R.; Mem. Op. at 1–3, *Commonwealth v. Maysonet*, No. 871 EDA 2001 (Pa. Super. Oct. 4, 2001).

murder.³ In October 2000, Judge Reibman sentenced Maysonet to a mandatory term of life imprisonment.⁴ Maysonet timely filed post-sentence motions, which Judge Reibman denied on February 16, 2001, via written opinion and order.⁵

Maysonet filed a timely notice of appeal from his judgment of sentence to the Superior Court of Pennsylvania on March 15, 2001.⁶ The Superior Court affirmed Maysonet's judgment of sentence on October 4, 2001.⁷ It does not appear that Maysonet filed a petition for allowance of appeal with the Supreme Court of Pennsylvania.⁸

On November 20, 2001, Maysonet filed a *pro se* first petition for post-conviction collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–9546 ("PCRA").⁹ On November 30, 2001, Judge Reibman appointed counsel to represent Maysonet in the prosecution of his first PCRA petition.¹⁰ Judge Reibman held an evidentiary hearing on

---

³ *See* Pet., Ex. B, Degree of Guilt Hr'g at 443.
⁴ *See* Pet. at ECF p. 1; Docket, *Commonwealth v. Maysonet*, No. CP-39-CR-3500-1999 (Lehigh Ct. Com. Pl.), *available at* https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-39-CR-0003500-1999 (hereinafter referred to as "Com. Pl. Docket"); State Ct. R.
⁵ *See* Com. Pl. Docket. Prior to the resolution of the post-sentence motions, Judge Reibman granted a motion for leave to withdraw filed by Maysonet's trial counsel, and new counsel entered an appearance on behalf of Maysonet. *See id.*; *see also* Resp. to Pet. for Writ of Habeas Corpus ("Resp.") at 1, Doc. No. 5.
⁶ *See* Com. Pl. Docket; Docket, *Commonwealth v. Maysonet*, No. 871 EDA 2001 (Pa. Super.), *available at* https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=871+EDA+2001 (hereinafter "Pa. Super. Docket")
⁷ *See* Pa. Super. Docket I; Com. Pl. Docket; Resp. at 2. It appears that while Maysonet's counseled direct appeal was awaiting disposition in the Superior Court, he filed a *pro se* notice of appeal to the Superior Court. *See* Com. Pl. Docket. It also appears that the Superior Court dismissed Maysonet's *pro se* appeal because he failed to timely file the necessary docketing statement required by Rule 3517 of the Pennsylvania Rules of Appellate Procedure despite the Superior Court warning him about the possible dismissal for failing to file the docketing statement with the court. *See* Docket, *Commonwealth v. Maysonet*, No. 3166 EDA 2001 (Pa. Super.), *available at* https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=3166+EDA+2001; State Ct. R.
⁸ *See* Com. Pl. Docket; Pa. Super. Docket; Resp. at 2. The court notes that on the portion of the section 2254 habeas form petitioner relating to Maysonet's direct appeal, Maysonet indicates: "Denied Supreme Court 5-21-01." *See* Pet. at ECF p. 2. This appears to state that Maysonet filed a petition for allowance of appeal. Despite this statement, there is no evidence in the state court record, the publicly available docket sheets for the Superior Court and the Supreme Court of Pennsylvania, or Westlaw, showing that Maysonet filed a petition for allowance of appeal with the Supreme Court of Pennsylvania. In addition, any denial of a petition for allowance of appeal (on May 21, 2001) could not have been related to Maysonet's direct appeal because the Supreme Court's decision would have occurred before the Superior Court first addressed the direct appeal.
⁹ *See* Com. Pl. Docket; Resp. at 2.
¹⁰ *See* Com. Pl. Docket.

the petition on January 15, 2002.[11] Judge Reibman denied the PCRA petition on June 27, 2002, via written opinion and order.[12]

Maysonet filed a counseled notice of appeal from Judge Reibman's denial of his PCRA petition to the Superior Court on July 11, 2002.[13] The Superior Court affirmed the PCRA denial on April 30, 2003.[14] On November 5, 2003, Maysonet filed a petition for leave to file a petition for allowance of appeal *nunc pro tunc* with the Supreme Court of Pennsylvania.[15] The Supreme Court of Pennsylvania granted the petition on May 26, 2004.[16] On July 10, 2004, Maysonet filed a petition for allowance of appeal with the Supreme Court of Pennsylvania.[17] The Supreme Court of Pennsylvania denied the petition for allowance of appeal on March 2, 2005.[18]

On April 26, 2005, Maysonet filed a *pro se* second PCRA petition.[19] Judge Reibman provided notice to Maysonet of the court's intent to dismiss the second PCRA petition without a hearing as permitted by Rule 907 of the Pennsylvania Rules of Criminal Procedure on May 25, 2005.[20] Despite having filed requests for extensions of time to file a response to the notice of

---

[11] *See* State Ct. R. After the hearing, Judge Reibman provided the parties with the opportunity to submit briefs in support of their respective positions. *See id.*; Com. Pl. Docket.
[12] *See* Com. Pl. Docket; Resp. at 2; State Ct. R.
[13] *See* Com. Pl. Docket; Resp. at 2; State Ct. R.
[14] *See* Docket, *Commonwealth v. Maysonet*, No. 2546 EDA 2002 (Pa. Super.), *available at* https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=2546+EDA+2002 (hereinafter referred to as "Pa. Super. PCRA Docket"); Mem. Op., *Commonwealth v. Maysonet*, No. 2546 EDA 2002 (Pa. Super. Apr. 30, 2003); Com. Pl. Docket; Resp. at 2; State Ct. R.
[15] *See* Docket, *Commonwealth v. Maysonet*, 182 MM 2003 (Pa.), *available at* https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=182+MM+2003.
[16] *See id.*
[17] *See* Docket, *Commonwealth v. Maysonet*, No. 606 MAL 2004 (Pa.), *available at* https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=606+MAL+2004; *see also* Pa. Super. PCRA Docket; Resp. at 2.
[18] *See* Docket, *Commonwealth v. Maysonet*, No. 606 MAL 2004 (Pa.), *available at* https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=606+MAL+2004; *see also* Pa. Super. PCRA Docket; Resp. at 2.
[19] *See* Com. Pl. Docket; *see also* Resp. at 2.
[20] *See* Com. Pl. Docket; *see also* Resp. at 2. Rule 907 provides in pertinent part as follows:

> If the judge is satisfied [from initially reviewing the PCRA petition] that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give

intent to dismiss, it does not appear that Maysonet ever responded to the notice.[21] After finding that the second petition was untimely filed, Judge Reibman dismissed the second PCRA petition without a hearing on December 28, 2005.[22]

Maysonet then filed a notice of appeal from the dismissal of his second PCRA petition to the Superior Court on January 31, 2006.[23] The Superior Court affirmed the dismissal of the second PCRA petition on December 8, 2006, concluding that the second PCRA was untimely.[24] Maysonet filed an application for reargument, which the Superior Court denied on February 13, 2007.[25] He then filed a petition for allowance of appeal to the Supreme Court of Pennsylvania on February 26, 2007, which the Court denied on July 18, 2007.[26]

---

      notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal.

Pa.R.Crim.P. 907(1). Judge Reibman issued the notice because the second PCRA petition failed to raise any genuine issue of material fact entitling Maysonet to relief and no purpose would be served by conducting any further proceedings in the matter. *See* Com. Pl. Docket; Resp. at 2; State Ct. R.
[21] *See* Com. Pl. Docket; State Ct. R.
[22] *See id.*; Resp. at 2; State Ct. R. It appears that the order is dated March 27, 2005, but it was not entered on the docket until March 28, 2005. *See* State Ct. R. Judge Reibman denied Maysonet's motion for additional time to respond to the notice as part of the dismissal order. *See id.* Judge Reibman dismissed the petition because "the time for any petition for post-conviction relief has long since passed and the issues [Maysonet] would now raise are waived." Mem. Op. at 1, *Commonwealth v. Maysonet*, No. CP-39-CR-3500-1999 (Lehigh Ct. Com. Pl. Mar. 15, 2006).
[23] *See* Com. Pl. Docket; *see also* Resp. at 2. It appears that Maysonet sent the notice to the Superior Court first, and it was docketed there on January 26, 2006. *See* State Ct. R.
[24] *See* Docket, *Commonwealth v. Maysonet*, No. 255 EDA 2006 (Pa. Super.), *available at* https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=255+EDA+2006; State Ct. R.; Mem. Op. at 4, *Commonwealth v. Maysonet*, No. 255 EDA 2006 (Pa. Super. Dec. 8, 2006). The Superior Court explained that as Maysonet's direct appellate review period ended on November 3, 2001, he had one year from that date, *i.e.* until November 4, 2002, to file a timely PCRA petition. *See* Mem. Op. at 4, *Commonwealth v. Maysonet*, No. 255 EDA 2006 (Pa. Super. Dec. 8, 2006). The Superior Court also determined that Maysonet failed to timely file the second petition because he filed it on April 26, 2005, and he failed to allege or prove that he was entitled to one of the three exceptions to the timeliness requirement in the PCRA. *See id.*; *see also* 42 Pa. C.S. § 9545(b)(1) (setting forth time limit for filing PCRA petition and exceptions to one-year limitations period).
[25] *See* Docket, *Commonwealth v. Maysonet*, No. 255 EDA 2006 (Pa. Super.), *available at* https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=255+EDA+2006.
[26] *See* Docket, *Commonwealth v. Maysonet*, No. 327 MAL 2007 (Pa.), *available at*: https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=327+MAL+2007.

Before the Supreme Court of Pennsylvania denied the petition for allowance of appeal, Maysonet filed his first petition for a writ of habeas corpus under 28 U.S.C. § 2254.[27] Apparently, Maysonet submitted a document claiming that he was in the process of exhausting his state court remedies under the PCRA, and Judge Davis entered a memorandum and order granting Maysonet's request and staying the case on October 4, 2007.[28] Judge Davis ordered Maysonet to provide the court with written notice of his desire to have the court decide his habeas petition on the merits within 30 days if the Supreme Court of Pennsylvania reached a negative decision with regard to his PCRA petition.[29] There is no indication that Maysonet provided this notice to Judge Davis after the Supreme Court of Pennsylvania denied his petition for allowance of appeal on July 18, 2007, and it appears that no action was taken in this federal habeas case for almost five years.[30]

During this almost five-year period, it appears that Maysonet filed documents with the Court of Common Pleas of Lehigh County on October 5, 2010, November 22, 2010, and January 3, 2011, which Judge Reibman treated as serial *pro se* PCRA petitions.[31] Judge Reibman issued a notice of intent to dismiss the PCRA petitions under Rule 907 of the Pennsylvania Rules of Criminal Procedure on January 7, 2011.[32] As with the second PCRA petition, Judge Reibman determined that the petition failed to raise any material fact entitling Maysonet to relief and that Maysonet failed to timely file the petitions.[33] The court provided Maysonet with 20 days to file

---

[27] *See Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.). Maysonet originally filed the petition in the United States District Court for the Western District of Pennsylvania on July 19, 2007, and the Western District transferred the case to this court on July 19, 2007. *See* Order, *Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.), Doc. No. 1. The petition was assigned to the Honorable Legrome D. Davis, now retired, for resolution.
[28] *See* Mem. and Order at 1, 3, *Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.), Doc. No. 2.
[29] *See id.*
[30] *See* Resp. at 3; Docket, *Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.).
[31] *See* Com. Pl. Docket; State Ct. R.; *see also* Resp. at 3.
[32] *See* Com. Pl. Docket; State Ct. R.; *see also* Resp. at 3.
[33] *See* Com. Pl. Docket; State Ct. R.; *see also* Resp. at 3.

a response to the notice.[34] Judge Reibman ultimately dismissed the PCRA petitions without a hearing on January 25, 2011, concluding that Maysonet failed to timely file the PCRA petitions.[35]

In response to the dismissal order, Maysonet filed a "Pro Se Motion to Vacate Void Judgement [sic]" on March 28, 2011, instead of filing a notice of appeal to the Superior Court.[36] Judge Reibman denied this motion on May 2, 2011.[37] Maysonet responded to this order by filing a "Pro Se Motion in the Nature of Application for Amendment of Court Decision Dated 5/2/2011" on May 17, 2011.[38] Judge Reibman denied this motion on July 25, 2011.[39]

Maysonet then filed an appeal to the Superior Court on August 12, 2011.[40] On February 10, 2012, the Superior Court ordered Maysonet to show cause, within 14 days, why the court should not quash the appeal as having been untimely filed from the May 2, 2011 denial of the PCRA petitions.[41] Although Maysonet responded to the order to show cause, the Superior Court ultimately dismissed the appeal for his failure to file an appellate brief on April 10, 2012.[42] It

---

[34] *See* Com. Pl. Docket; State Ct. R.; *see also* Resp. at 3.
[35] *See* Com. Pl. Docket; State Ct. R.; *see also* Resp. at 3. The dismissal order is dated for January 24, 2011. *See* State Ct. R. In addition, in the dismissal order, Judge Reibman noted that Maysonet appeared to have responded to the notice by filing a 50-page document titled "Petition for Redress of Grievances," which was "mostly incomprehensible." *See* Order, *Commonwealth v. Maysonet*, No. CP-39-CR-3500-1999 (Lehigh Ct. Com. Pl. Jan. 25, 2011). Judge Reibman nevertheless determined that to the extent that Maysonet's response was discernable, "it clearly fails to set forth any applicable exception to the requirement that a petition for post-conviction relief must be filed within one year of the date the judgment becomes final." *See id.*
[36] *See* Com. Pl. Docket; State Ct. R.; *see also* Resp. at 3.
[37] *See* Com. Pl. Docket; State Ct. R.; *see also* Resp. at 3.
[38] *See* Com. Pl. Docket; State Ct. R.; *see also* Resp. at 3.
[39] *See* Com. Pl. Docket; State Ct. R.; *see also* Resp. at 3.
[40] *See* Com. Pl. Docket; State Ct. R.; *see also* Resp. at 3.
[41] *See* Docket, *Commonwealth v. Maysonet*, No. 2273 EDA 2011 (Pa. Super.), *available at* https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=2273+EDA+2011.
[42] *See* Docket, *Commonwealth v. Maysonet*, No. 2273 EDA 2011 (Pa. Super.), *available at* https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=2273+EDA+2011; State Ct. R.; *see also* Resp. at 4.

does not appear that Maysonet filed a petition for allowance of appeal with the Supreme Court of Pennsylvania.[43]

In July 2012, Maysonet filed two documents in this court at Civil Action No. 07-4116. The first document was a "Motion and Declaration in Support of Motion to Proceed in Forma Pauperis."[44] The second document was a "Writ of Habeas Corpus Ad Subjiciedum [sic] 42 Pa.C.S. Section 6501 et seq."[45] Maysonet also later filed four other documents: a "Notice" on September 24, 2012; a "Notice of Fault and Opportunity to Cure and Contest Acceptance" on November 6, 2012; an "Affidavit of Certificate of Non-Response and Failure to Contest Acceptance and Agreement" and an "Affidavit of Notice of Default" on November 19, 2012.[46]

Judge Davis entered an order on November 26, 2012, which directed the clerk of court to furnish Maysonet with a current form for filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 and an application to proceed *in forma pauperis*.[47] Judge Davis also directed Maysonet to file the completed section 2254 form and application to proceed *in forma pauperis* with the clerk of court within 30 days from the date of the order.[48]

After the clerk of court received notice that Judge Davis's November 26, 2012 order was sent to the wrong address (Maysonet was apparently located in a different state correctional institution), Judge Davis entered an order identical to the November 26, 2012 order on January 11, 2013.[49] When Maysonet did not timely respond to Judge Davis's January 11, 2013 order

---

[43] Although unclear as to the precise relief Maysonet was seeking, it appears that he filed a *pro se* motion seeking a writ of mandamus or other extraordinary relief with the Supreme Court of Pennsylvania on February 17, 2012 (prior to the Superior Court dismissing the appeal). *See* Docket, *Commonwealth v. Maysonet*, No. 43 MM, 2012 (Pa.), *available at* https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=43+MM+2012 (last visited September 13, 2018). The Supreme Court of Pennsylvania denied the motion on May 23, 2012. *See id.*
[44] *See Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.), Doc. No. 3.
[45] *See Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.), Doc. No. 4.
[46] *See Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.), Doc. Nos. 5-8.
[47] *See* Order, *Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.), Doc. No. 9.
[48] *See id.*
[49] *See* Order, *Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.), Doc. No. 10.

within 30 days, Judge Davis entered an order on February 26, 2013, which denied Maysonet's motion for leave to proceed *in forma pauperis* because of his failure to respond.[50] The only document Maysonet filed thereafter, which the clerk of court docketed on March 15, 2013, was titled "Object of a Right."[51] Maysonet never filed a notice of appeal to the Third Circuit from Judge Davis's order denying his application for leave to proceed *in forma pauperis*, and Judge Davis took no further action in the matter.[52]

On May 21, 2018,[53] slightly more than five years after Judge Davis denied Maysonet's *in forma pauperis* application and 12 years after the Supreme of Pennsylvania denied his petition for allowance of appeal from the Superior Court's affirmance of the denial of his first PCRA petition, Maysonet filed a *pro se* petition under 28 U.S.C. § 2254 for writ of habeas corpus by a

---

[50] *See* Order, *Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.), Doc. No. 11. The court notes that Maysonet apparently filed a petition for a writ of mandamus with the Third Circuit Court of Appeals on February 22, 2013, which the Third Circuit denied on March 8, 2013. *See* Docket, *In re: Carlos R. Javier Maysonet*, No. 12-4406 (3d Cir.); *see also* Third Circuit Order, *Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.), Doc. No. 12.

[51] *See* Object of a Right, *Maysonet v. Commonwealth*, Civ. A. No. 07-4116 (E.D. Pa.), Doc. No. 13. It is unclear precisely what Maysonet was seeking by filing this document because it is very difficult to interpret. Maysonet appears to assert a belief that section 2254 does not provide him the relief he seeks in the case. *See id.* at ECF p. 1 ("After this Court has issued an Order dated October 3rd, 2007, has [sic] learned that 28 U.S.C. §2254, do [sic] not actually provide petitioner relief to his necessities and disadvantage of the undergoing circumstances surrounding his case."). He also appears to recognize that the court ordered him to complete a section 2254 petition and an *in forma pauperis* application. *See id.* ("Further, this Court did issue an Order dated November 27, 2012, ordering petitioner i.e. Carlos J. Rivera Maysonet to fill up a Petition Under 28 U.S.C. §2254 for Habeas Corpus and an In Forma Pauperis Form."). He further mentions that he has problems with reading and writing English. *See id.* at ECF pp. 1, 2. He also appears to request that the court recognize his petition for a writ of habeas corpus *ad subjiciendum*. *See id.* at ECF p. 2 ("Petitioner request/ask to this Court to reckognize [sic] the petitioner's filing of Writ of Habeas Corpus Ad Subjiciendum pursuant to United States of North America and Commonwealth of Pennsylvania Constitution to use the privilege to have the right to file an Original Writ of Habeas Corpus Ad Subjiciendum, and proceed and serve referred writ of habeas corpus pursuant to the common law-positive law to do so.").

[52] Because Judge Davis never addressed any of Maysonet's claims, the instant petition is not a "second or successive" petition under 28 U.S.C. § 2244(b)(2). *See, e.g.*, *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644–45 (1998) (concluding that habeas petitioner's second section 2254 petition was not second or successive because petitioner did not "receive an adjudication of his claim" in first habeas petition, and explaining that "[t]o hold otherwise would mean that a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review").

[53] The federal "prisoner mailbox rule" provides that a pro se prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275-76 (1988). Here, Maysonet included a declaration with the motion in which he states that he provided the motion to prison authorities on May 21, 2018, for mailing to the clerk of court. *See* Pet. at ECF p. 16. Due to this declaration, the court has used May 21, 2018 as the filing date.

8

person in state custody.[54] In the instant section 2254 petition, Maysonet raises the following issues:

> [Ground One:] a) No knowledge given as to enter a nollo [sic] contendere plea; b) After has [sic] discussed specific degree and no element surprise shall be used; claimant was found guilty on a non-discussed degree which is not supported by the record; c) No knowledge was given about a Hearing Dregree [sic] by Jury; d) No knowledge was given regarding to plea withdraw within ten days.
>
> [Ground Two:] Denial of Guaranteed Due Process Rights. . . . 1) At the preliminary hearing just one witness was presented and convinced to testify under perjury; 2) After the preliminary hearing non-cross examined witnesses went incorporated to the case; 3) Judge and District Attorney refused to provide/grant Bill of Particulars and full discovery; 4) Claimant was entrampted [sic] to testify against himself.
>
> [Ground Three:] Court Appinted [sic] Counselors Breach of Their Constitutional (Contract) Oath of Office during the discharge of their duties. . . . 1) Court Appointed Counsel did not appeal Bill of Particulars and full discovery denial; 2) The Hearing Degree Counsel did not object-appeal incorporated non-cross examined witnesses at preliminary hearing; 3) Court Appointed Counsel did not suppress evidence and testimony, ect. [sic] of incorporated non-cross examined at preliminary hearing witnesses; 4) Direct Appeal Counsel has sua sponte his non-vital facts and issues; 5) PCRA Counsel did not amend PCRA or at least care about paper work.
>
> [Ground Four:] Legal Innocence. . . . If either of the trial court appointed counsel or the Post Conviction Collateral Relief Petition appointed counsel has raised and/or presented to the trial court all of the procedural-default grounds stated on

---

[54] In 2017, Maysonet filed two miscellaneous matters. The first was a purported Rule 60(b) motion which the clerk of court docketed on June 20, 2017. *See In re Maysonet*, No. 17-mc-109 (E.D. Pa.), Doc. No. 1. He also filed a "Notice to [sic] Appeal" and what appeared to be another copy of the purported Rule 60(b) motion that he filed in No. 17-mc-109. *See In re Maysonet*, No. 17-mc-169, Doc. Nos. 1, 2. At no point in these documents did Maysonet competently explain the order from which he was seeking to appeal (in fact, it somewhat appeared that he was trying to appeal from a Supreme Court of Pennsylvania order denying a petition for allowance of appeal). *See, e.g.*, Amendment of Mot. to Seek Relief Pursuant to Fed. R. Civ. P. 60(b) at ECF p. 3 ("Movant is seeking relief from Pennsylvania Supreme Court Order as stated copy attached on prior Motion For Relief Pursuant To 60(b) filed."), *In re Maysonet*, No. 17-mc-109 (E.D. Pa.), Doc. No. 5. This court entered an order in both actions on January 3, 2018, denying the actions without prejudice to Maysonet to file a petition for habeas relief under 28 U.S.C. § 2254. *See In re Maysonet*, No. 17-mc-109 (E.D. Pa.), Doc. No. 6; *In re Maysonet*, No. 17-mc-169 (E.D. Pa.), Doc. No. 4. Maysonet did not attempt to appeal from these orders.

Subsequent to the court's January 3, 2018 order, Maysonet filed a motion for leave to proceed *in forma pauperis* and a petition for production of records and files which the clerk of court docketed at No. 17-mc-109 on April 27, 2018. *See In re Maysonet*, No. 17-mc-109 (E.D. Pa.), Doc. Nos. 7-9. This court denied the application for leave to proceed *in forma pauperis* and petition for production of records via an order entered on May 2, 2018, because, *inter alia*, the court previously dismissed the action. *See* Order, *In re Maysonet*, No. 17-mc-109 (E.D. Pa.), Doc. No. 10. Maysonet did not appeal from this order.

this petition; claimant would be given exoneration and exculpatory abode as longer the cause and prejudice doctrine has protected claimant's (Constitutional) legal rights and interests.[55]

Regarding the timeliness of the petition, Maysonet states: "Judge Legrom[e] D. Davis did retire without has [sic] address and decided over the writ of habeas corpus filed, and no knowledge I has [sic] received about his retirement, and at the filing of a Rule 60(b) Motion was Ordered to file the instant Habeas Corpus."[56]

On June 19, 2018, this court preliminarily reviewed the habeas petition and entered an order requiring the respondents to file an answer and memorandum concerning the timeliness of the petition and any applicable statutory or equitable tolling of the statutory of limitations by July 18, 2018.[57] The court also directed Maysonet to file a reply to the respondents' answer and memorandum on or before August 20, 2018.[58]

The respondents timely filed a response to the petition on July 18, 2018.[59] To date, Maysonet has not responded to the court's order.[60]

## II. DISCUSSION

The primary issue that the court is concerned with at this stage is whether the statute of limitations under Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") bars the

---

[55] Pet. at ECF pp. 5, 7, 9, 10-11.
[56] *Id.* at ECF p. 14.
[57] *See* Order at 1-2, Doc. No. 3.
[58] *See id.* at 3. The court also addressed a motion for production of records that Maysonet filed with his habeas petition. *See id.* The court denied the motion without prejudice to him reasserting it if the court ultimately determined that the statute of limitations did not bar the instant petition. *See id.*
[59] *See* Doc. No. 5.
[60] There is no indication, by way of returned mail from the United States Postal Service, that Maysonet has not received the court's June 19, 2018 order. Maysonet did file a document titled, "Notice of Status and Standing Regarding filings of Paper Work and Documents; and Request for an Injunction," which the clerk of court docketed on October 11, 2018. *See* Doc. No. 7. As best the court can discern, Maysonet filed the document to explain why he had refused a copy of the court's September 18, 2018 order. *See* Doc. No. 7 at ECF pp 1–2; *see also* Unnumbered Docket Entry Between Doc. Nos. 6 and 7 (indicating that September 18, 2018, was returned to the clerk of court because Maysonet refused to accept envelope containing order). He also was attempting to have the court address the Pennsylvania Department of Corrections' mail policy, which he claimed was violating his rights. *See* Doc. No. 7 at ECF p. 2. At no point in this document does Maysonet attempt to explain how the instant habeas petition is timely.

court from considering Maysonet's section 2254 habeas petition. Regarding the applicable statute of limitations, the AEDPA provides as follows:

> **(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[61]

Here, Maysonet does not assert any arguments that subsections (B)–(D) apply here insofar as (1) he has not identified any purported state action in violation of the Constitution or laws of the United States which prevented him from filing a habeas petition, (2) he has not identified a newly recognized constitutional right that was made retroactively applicable to cases on collateral review and somehow pertains to his case, and (3) he has not asserted that he has any newly discovered evidence that he could not have previously discovered despite the exercise of due diligence. Therefore, only subsection (A) applies here.

When calculating the commencement of the statute of limitations for purposes of subsection (A), the court must determine when Maysonet's judgment of sentence became final. "Under § 2244(d)(1)(A), a state court criminal judgment becomes 'final' and the statute of

---

[61] 28 U.S.C. § 2244(d).

limitations begins to run, 'at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires.'"[62]

Here, the Superior Court affirmed Maysonet's judgment of sentence on direct appeal on October 4, 2001. Maysonet had 30 days thereafter (or until November 5, 2001)[63] to file a petition for allowance of appeal with the Supreme Court of Pennsylvania.[64] Maysonet did not file a petition for allowance of appeal; as such, his judgment of sentence became final on November 5, 2001. Therefore, AEDPA's statute of limitations began to run on November 5, 2001, and Maysonet had until November 5, 2002, to file his section 2254 petition unless any statutory or equitable tolling period applies.

Concerning statutory tolling, the AEDPA contains a tolling provision, which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."[65] A "properly filed application" for state post-conviction collateral review is "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing.[66] "State prisoners

---

[62] *Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999) (quoting *Kapral v. United States*, 166 F.3d 565, 575 (3d Cir. 1999) and citing *Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999)).

[63] The 30-day period concluded on Saturday, November 3, 2001. Maysonet would have had until the following Monday to file the petition. *See* Pa.R.A.P. 107 (incorporating by reference the rules of construction of the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1901–1991); 1 Pa. C.S. § 1908 ("Whenever the last day of any such period [of time referenced in a statute] shall fall on Saturday or Sunday . . . such day shall be omitted from the computation.").

[64] *See* Pa.R.A.P. 1113(a) ("Except as otherwise prescribed by this rule, a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of the Superior Court or the Commonwealth Court sought to be reviewed."). As Maysonet was proceeding in 2001, the then-version of Pennsylvania Appellate Rule 1113(a) applies to his action during this period. At the time, it appears that the version of Rule 1113 had been in effect without amendment since approximately September 13, 1982. *See* Pa.R.A.P. 1113, credits (showing amendment adopted on April 26, 1982, and effective 120 days after May 15, 1982, and next amendment adopted October 18, 2002, and effective on December 2, 2002). It appears that the timing to file a petition for allowance of appeal was also 30 days during this period. *See, e.g.*, *Commonwealth v. Barrett*, 761 A.2d 145, 147 n.5 (Pa. Super. 2000) (pointing out then-version of Rule 1113, which provided 30-day period for filing petition for allowance of appeal with Supreme Court of Pennsylvania).

[65] 28 U.S.C. § 2244(d)(2).

[66] *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998).

therefore must file their state claims promptly and properly under state law in order to preserve their right to litigate constitutional claims that are more than one year old in federal court."[67] If the state court dismisses a late-filed application for post-conviction collateral review because it is time-barred, the application does not constitute a "properly filed application" for AEDPA tolling purposes.[68]

As indicated by the language of the AEDPA, the court must "look to state law governing when a petition for collateral relief is properly filed."[69] Under the PCRA, an individual seeking post-conviction collateral relief must file the petition "within one year of the date the judgment becomes final" unless the petitioner alleges and proves one of three limited exceptions which are inapplicable here.[70] A judgment becomes final under the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."[71]

As indicated above, Maysonet timely filed his first PCRA petition on November 20, 2001, and, as such, the limitations period was statutorily tolled until the Supreme Court of

---

[67] *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir. 2001).
[68] *See Merrit v. Blaine*, 326 F.3d 157, 165–66 (3d Cir. 2003).
[69] *Fahy*, 240 F.3d at 243.
[70] 42 Pa. C.S. § 9545(b)(1). Those three exceptions are:
    (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
    (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
    (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.
42 Pa. C.S. § 9545(b)(1)(i)-(iii). The court notes that section 9545 has remained unchanged since January 1996. *See* 42 Pa. C.S. § 9545, credits (showing that last amendment to statute occurred on November 17, 1995, and was effective in 60 days).
[71] 42 Pa. C.S. § 9545(b)(3).

Pennsylvania denied Maysonet's petition for allowance of appeal on March 2, 2005.[72] The limitations period resumed on that date.

Maysonet also filed a second PCRA on April 26, 2005. This second petition did not toll the statute of limitations because the state courts determined that Maysonet did not timely file the petition and the petition did not meet any of the exceptions to the time-bar set forth in 42 Pa. C.S. § 9545(b)(1)(i)–(iii). *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (concluding that "[b]ecause the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and [the petitioner] is not entitled to statutory tolling under § 2244(d)(2)"). Since the second petition did not statutorily toll the limitations period, Maysonet needed to file his section 2254 petition by no later than March 2, 2006. As Maysonet did not file the instant petition until May 21, 2018, the petition is facially untimely.[73]

This determination is not the end of the inquiry because the court must also examine whether Maysonet's petition is entitled to equitable tolling. In this regard, the limitations period in section 2244(d) is not jurisdictional and, as such, is subject to equitable tolling where the petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."[74] The petitioner has the burden of demonstrating an entitlement to equitable tolling and establishing due diligence.[75]

---

[72] The 90-day period during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his or her state PCRA petition "does not toll the one-year limitations period set forth at 28 U.S.C. § 2244(d)(2)." *Stokes v. Dist. Attorney of Phila.*, 247 F.3d 539, 543 (3d Cir. 2001).

[73] Maysonet's 2010 and 2011 serial PCRA petitions filed in the Court of Common Pleas would not have tolled the statute of limitations because it had already expired.
*See Long v. Wilson*, 393 F.3d 390, 395 (3d Cir. 2004) ("The state habeas petition had no effect on tolling because an untimely state post-conviction petition is not properly filed for purposes of tolling, and, in any event, the limitations period had already run when it was filed." (internal citations and quotation marks omitted)).

[74] *Holland v. Florida*, 560 U.S. 631, 645–46, 649 (2010).

[75] *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

"The decision to equitably toll § 2244(d) 'must be made on a case-by-case basis.'"[76] In addition,

> [i]n each case, there is a need for flexibility, avoiding mechanical rules, and awareness ... that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case. There are no bright lines in determining whether equitable tolling is warranted in a given case. Rather, equitable tolling is appropriate when principles of equity would make the rigid application of a limitation period unfair.[77]

"In the final analysis, . . . 'a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice.'"[78]

Here, Maysonet has not specifically argued that he is entitled to equitable tolling and has failed to present sufficient averments or evidence to account for the approximately 13-year delay in filing the instant petition for writ of habeas corpus. Even presuming that Maysonet has been pursuing his rights diligently, he has not demonstrated that an extraordinary circumstance stood in his way and prevented him from filing the instant petition.[79] The court recognizes that Maysonet mentions his limited English proficiency in his habeas petition,[80] but he references it not as an excuse for failing to file a timely habeas petition; instead, he claims it is the reason why the courts have not granted him the relief sought to date. At bottom, even if Maysonet's

---

[76] *Munchinski v. Wilson*, 694 F.3d 308, 329 (3d Cir. 2012) (quoting *Holland*, 560 U.S. at 650–51).
[77] *Id.* (internal citations and quotation marks omitted).
[78] *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999) (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)). In *Jones*, the Third Circuit discussed that, in other cases, "equitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Id.* (citation and internal quotation marks omitted). The Third Circuit also referenced a decision in a Title VII action in which the court determined that equitable tolling may be appropriate where "'a claimant received inadequate notice of her right to file suit, where a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that she had done everything required of her.'" *Id.* (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)).
[79] Concerning Maysonet's diligent pursuit of his rights, he must "show that he . . . 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618–19 (3d Cir. 1998) (second alteration to original) (internal citation and citation omitted). While Maysonet has been pursuing litigation since his judgment of sentence, there have been a number of lengthy delays so if the court had to address his diligence, the court would not find that he has been diligently pursuing his rights.
[80] *See, e.g.*, Pet. at ECF p. 6.

statement could somehow be interpreted as a claim for equitable tolling, his claim does not rise to the level of an extraordinary circumstance entitling him to equitable tolling.

Maysonet's additional assertion, that the instant petition was timely because he did not know about Judge Davis's retirement, also does not warrant any relief. Judge Davis denied Maysonet's *in forma pauperis* application in March 2013, and it is unclear how a lack of knowledge of Judge Davis's retirement has any bearing on the timing of the filing of the instant petition. As such, it is also not an extraordinary circumstance warranting equitable tolling.

Although the court has determined that Maysonet is not entitled to equitable tolling, the court must conduct the final inquiry to determine whether he has asserted a convincing claim of actual innocence that can overcome the limitations period.[81] A petitioner seeking to invoke a claim of actual innocence to overcome a time bar must "present[] 'evidence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"[82]

After thoroughly reviewing the habeas petition and the attachments thereto, it appears that almost all Maysonet's arguments relate to procedural issues relating to pretrial proceedings and his trial proceedings. Nonetheless, it is possible that Maysonet is raising a claim of actual innocence when he states: "claimant was found guilty on a non-discussed degree which is not supported by the record."[83] Even if the court construes this as a claim of actual innocence, there is nothing in the petition or attached to the petition remotely showing evidence of Maysonet's innocence that is "'so strong that a court cannot have confidence in the outcome of the trial.'"[84]

---

[81] *See McQuiggin v. Perkins*, 569 U.S. 383 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in [*Schlup v. Delo*, 513 U.S. 298 (1995) and *House v. Bell*, 547 U.S. 518 (2006)], or, as in this case, expiration of the statute of limitations.").
[82] *Id.* (quoting *Schlup*, 513 U.S. at 316).
[83] Pet. at ECF p. 5.
[84] *Id.* (quoting *Schlup*, 513 U.S. at 316).

As such, this exception to the time bar is also inapplicable and, as such, the instant petition is untimely.

## III.  CERTIFICATE OF APPEALABILITY

To be entitled to a certificate of appealability, Maysonet would have to show that, *inter alia*, reasonable jurists would debate whether this court was correct in its ruling.[85]  The court does not find that a reasonable jurist would disagree with the court's assessment of the timeliness of Maysonet's claims; accordingly, the court will not issue a certificate of appealability.

## IV.  CONCLUSION

Maysonet's judgment of sentence became final on November 5, 2001, and, because he timely filed a PCRA petition, he was entitled to statutory tolling under section 2244(d)(2) until the Supreme Court of Pennsylvania denied his petition for allowance of appeal on March 2, 2005.  He had one year from that date, *i.e.* until March 2, 2006, to file the instant petition. Maysonet did not file the instant petition until more than 12 years had passed from the expiration of the time for him to file a habeas petition under section 2244(d)(1).  There is no basis for equitable tolling here, and Maysonet has not set forth a colorable claim of actual innocence. Accordingly, the court must dismiss the petition as untimely.  The court will not issue a certificate of appealability.

The court will enter a separate order.

BY THE COURT:

*/s/ Edward G. Smith*
EDWARD G. SMITH, J.

---

[85] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("To obtain a COA under § 2253, a habeas petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that ... includes a showing that reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement further." (internal citations and question marks omitted)).